```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                  :
THOR 725 8TH AVENUE LLC,                          :
                                                  :    14 Civ. 4968 (PAE)
                              Plaintiff,          :
                                                  :    OPINION & ORDER
            -v-                                   :
                                                  :
MARIE GOONETILLEKE, et al.,                       :
                                                  :
                              Defendants.         :
                                                  :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/3/15

PAUL A. ENGELMAYER, District Judge:

This order resolves a discovery dispute that the parties first addressed at a conference held on February 11, 2015, and thereafter in letter-memoranda, which the Court had invited. *See* Dkt. 32, 37.

By way of background, plaintiff Thor 725 8th Avenue LLC ("Thor"), a landlord, has sued the defendants in this case for more than $2 million in past-due rent, rent reductions, and real-estate taxes that Thor is due under a commercial real-estate lease. *See* Dkt. 2 ("Complaint") ¶ 14. Under the lease, an entity known as 725 8th Avenue Realty, LLC ("the original landlord") leased space in a building located at 725 8th Avenue, New York, New York ("the premises"), to a tenant identified as DVD Depot Inc. ("DVD Depot"). Dkt. 37, Ex. 3. Thor later purchased the building and succeeded to the original landlord's rights and obligations. Complaint ¶¶ 12–13.

The defendants in this case are DVD Depot's owners: Shanthioa Goonetilleke, a/k/a Martin Goonetilleke, and Marie Gonnetilleke (collectively, "the defendants"). Thor alleges that defendants guaranteed DVD Depot's obligations under that lease, *see* Complaint ¶ 1, and therefore are responsible for the amounts that DVD Depot did not pay. Specifically, Thor notes,

under a document entitled the "Limited Guaranty," executed on December 22, 2003, each defendant:

> jointly and severally unconditionally guarantees to Landlord, its successors and assigns [Thor], the full and prompt payment of all amounts payable by Tenant and the full and timely performance and observance of all the covenants, terms, conditions and agreements therein provided to be performed and observed by Tenant under the Lease.

Dkt. 37, Ex. 2.

Defendants now seek to resist this obligation on the theory that Thor interfered with, or frustrated the purpose of, the underlying tenancy. Defendants claim that Thor thereby breached its covenant of good faith and fair dealing, so as to excuse DVD Depot from the duty to pay rent and the defendants from their guarantee of the rent payments.

Defendants allege that Thor took two actions constituting a breach. First, defendants allege, Thor, without DVD Depot's consent, posted "Retail Space Available" signs in the storefront, which "led creditors to believe the tenant was out of business, so that creditors cut off the credit necessary for operations." Dkt. 32, at 3. Second, defendants allege, Thor, in the course of seeking to obtain successor tenants, invited real estate brokers and prospective lessees to enter the premises multiple times per day. *Id.* Because DVD Depot's business included selling X-rated DVDs, defendants argue, this "unwanted public traffic" drove away its customers and therefore diminished the existing tenant's revenue. *Id.*

Attempting to substantiate these claims, defendants now seek broad-ranging discovery into Thor's treatment of DVD Depot, whose rent payments defendants guaranteed. Specifically, defendants seek testimony from the property manager, Veronica Semey, and a vice president, Joseph Matalon, as to Thor's marketing of the premises. Defendants also seek the identities of the real estate companies or brokers that Thor utilized for leasing the premises, the person who

was responsible for the placement of the rental signs on the premises, the managing agent employees who had communications with real estate brokers concerning the leasing of the premises, and prospective lessees who communicated with Thor or its representatives concerning the leasing of the premises, all presumably for the purpose of noticing the depositions of those persons.  Finally, defendants also seek documents or communications (1) between Thor and real estate agents concerning the leasing of the premises, (2) concerning the authorization for or the preparation of rental signs on the premises, (3) between Thor and prospective lessees for the premises, and (4) with the managing agent concerning prospective lessees.

Thor counters that, as a matter of law, defendants may not defend against Thor's claims on their guaranty by claiming that Thor interfered with DVD Depot's occupancy so as to vitiate its duty to pay rent.  Dkt. 37, at 1.

For two reasons, Thor is correct.

First, under New York law, "[t]here must be an eviction, actual or constructive, before the rent becomes due, . . . to defeat an action for the rent at the suit of the landlord or his assigns." *ReliaStar Life Ins. Co. of N.Y. v. Home Depot U.S.A., Inc.*, 570 F.3d 513, 517 (2d Cir. 2009) (quoting *Whalin v. White*, 25 N.Y. 465, 465 (1862)).  Here, there was neither.  As to actual eviction, this "occurs only when the landlord wrongfully ousts the tenant from physical possession of the leased premises.  There must be a physical expulsion or exclusion." *Barash v. Penn. Terminal Real Estate Corp.*, 26 N.Y.2d 77, 82 (1970).  There is no claim that this happened here.  As to constructive eviction, the duty of a commercial tenant to pay rent may not be excused on account of a constructive eviction if the tenant remains in possession of the premises.  A "constructive eviction exists where, although there has been no physical expulsion or exclusion of the tenant, the landlord's wrongful acts substantially and materially deprive the

tenant of the beneficial use and enjoyment of the premises." *Barash*, 26 N.Y.2d at 83; *see also Pacific Coast Silks, LLC v. 247 Realty, LLC*, 76 A.D.3d 167, 172–73 (1st Dep't 2010). However, "where the tenant remains in possession of the . . . premises there can be no constructive eviction." *Barash*, 26 N.Y.2d at 83. And, decisive here, "[t]he obligation of a commercial tenant to pay rent is not suspended if the tenant remains in possession of the leased premises, even if the landlord fails to provide essential services." *Towers Org., Inc. v. Glockhurst Corp., N.V.*, 160 A.D.2d 597, 599 (1st Dep't 1990); *see also Allerand, LLC v. 233 East 18th Street Co., L.L.C.*, 19 A.D.3d 275, 276 (1st Dep't 2005); *Earbert Rest., Inc. v. Little Luxuries, Inc.*, 99 A.D.2d 734, 734 (1st Dep't 1984).[1]

Here, it is undisputed that the tenant, DVD Depot, remained in possession of the leased premises during the entire relevant period. Defendants do not claim that DVD Depot vacated the premises when or after Thor took the aforementioned steps that defendants claim interfered with DVD Depot's occupancy. As a matter of law, therefore, defendants cannot claim that Thor constructively evicted DVD Depot from the premises, thereby excusing it from the duty to pay rent. And even if the parties could contract around this background principle of New York law, they did not do so here. On the contrary, under the Triple Net Lease, executed on January 14, 2004, DVD Depot agreed that:

> this Lease shall not terminate, nor shall Tenant be entitled to any abatement, deduction, counterclaim, defense, setoff, recoupment, suspension, deferment,

---

[1] The same applies to residential lessees: Under New York law, a residential lessee also cannot claim constructive eviction without vacating the premises and experiencing a substantial and material deprivation of the use and enjoyment of the premises. *See, e.g.*, *Szewczuk v. Stellar 117 Garth, LLC*, No. 09 Civ. 1570 (PAC), 2012 WL 8141900, at *5 (S.D.N.Y. Sept. 4, 2012); *Colina v. One E. River Place Realty Co., LLC*, No. 99 Civ. 5173 (DC), 2000 WL 1171126, at *9 (S.D.N.Y. Aug. 17, 2000); *Yetnikoff v. Mascardo*, 63 A.D.3d 473, 475 (1st Dep't 2009); *Jackson v. Westminster House Owners Inc.*, 24 A.D.3d 249, 250 (1st Dep't 2005); *E. End Temple v. Silverman*, 199 A.D.2d 94, 94 (1st Dep't 1993).

>    diminution or reduction or Rent, or set-off against the Rent . . . nor shall the obligations of Tenant be otherwise affected, by . . . the interference with such use by any private person or corporation, the impossibility of performance by Landlord, Tenant or both, . . . or for any other cause whether similar or dissimilar to the forgoing . . . ; it being the intention that the obligations of Tenant hereunder shall be separate and independent covenants and agreements and that the Rent and additional rent and all other sums payable by the Tenant hereunder shall continue to be payable in all events.

Dkt. 37, at 3.

Second, even if the law did permit defendants to claim a constructive eviction of DVD Depot despite its having remained in possession of the premises, the acts on which defendants rely—placing a "Retail Space Available" sign on the premises, *see* Dkt. 32, Ex. A; Dkt. 37, Ex. 1, and allowing the premises to be viewed by potential future tenants—are insufficient, as a matter of law, to support a claim of a constructive eviction. *See Broadway Copy Service, Inc. v. Broad-Wall Co.*, 77 A.D.2d 827, 827–28 (1st Dep't 1980) (landlord's covering the clear doors of the premises with opaque paint did not constitute actual or constructive eviction, although tenant argued that the landlord's act precluded customers from knowing the nature of the tenant's business and deprived the tenant of possible sales); *Barash*, 26 N.Y.2d at 84 (collecting examples of constructive evictions, including an open sewer, defective plumbing, and noxious gas); *Lounsbery v. Snyder*, 31 N.Y. 514, 515–16 (1865) ("[A]n entry does not amount to an eviction, if the act, though wrongful, be in the nature of a mere trespass, not interfering with the substantial enjoyment of the premises. . . . If the law were otherwise, the most trivial trespass by the landlord would involve a forfeiture of his rights."). "[I]f it were necessary, one might properly invoke the application of the familiar maxim, '*de minimis non curat lex*' (the law does not concern itself with trifles)." *Eastside Exhibition Corp. v. 210 E. 86th St. Corp.*, 18 N.Y.3d 617, 622 (2012) (quoting *Lounsbery*, 31 N.Y. at 516). Defendants do not cite any contrary authority.

The Court, therefore, rules that DVD Depot's obligation to pay rent was not excused. There is, accordingly, no charter in this action for authorizing discovery into the subject of Thor's alleged interference with DVD Depot's enjoyment of the premises. The Court therefore denies defendants' request to undertake discovery into this subject.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 3, 2015
      New York, New York