USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/15/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

THOR 725 8TH AVENUE LLC,

                                      Plaintiff,

                  -v-

SHANTHIOA GOONETILLEKE a/k/a MARTIN
GOONETILLEKE and MARIE GOONETILLEKE,

                                   Defendants.

------------------------------------------------------------X

                        14 Civ. 4968 (PAE)

                     OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion to impose, on the losing party, the costs of enforcement of a contractual guaranty. On October 2, 2015, the Court granted plaintiff Thor 725 8th Avenue LLC ("Thor") summary judgment on its breach-of-guaranty claim against Shanthioa Goonetilleke, a/k/a Martin Goonetilleke, and Marie Goonetilleke (together, the "Goonetillekes"), and held that the Goonetillekes are liable to Thor on that claim for $2,067,288.89. Thor now moves for prejudgment interest on that amount, as well as an award of $309,212 for attorneys' fees and costs sustained in this action.

For the reasons that follow, the Court holds that Thor is entitled to recover prejudgment interest, as well as attorneys' fees and costs incurred in successfully litigating the breach-of-guaranty claim. However, the Court finds that a reduced award of $165,544.78 is warranted.

## I.       Background

### A.       Factual Background[1]

Thor, a limited liability company, owns a building at 725 8th Avenue, New York, NY

(the "Premises"), which was purchased from the prior landlord, 725 8th Avenue Realty, LLC, on

September 25, 2013.  The tenant under the commercial lease at issue (the "Lease") is DVD

Depot Inc. ("DVD"), an adult video store, which is wholly owned by Martin Goonetilleke.  The

Goonetillekes, who are husband and wife, are guarantors of the lease.

On January 14, 2004, DVD entered into the Lease with the prior landlord, which

provided for a 15-year lease term expiring February 28, 2019, unless terminated earlier.  Three

terms of the Lease bear on a claim for costs of its enforcement.  Article 26 provides:

> [DVD] covenants and agrees that in case Landlord shall be made a party to any
> litigation commenced against [DVD] or in connection with the Demised
> Premises, then [DVD] shall pay all expenses, costs and reasonable attorneys' fees
> and disbursements incurred by or imposed on the Landlord by or in connection
> with such litigation, and [DVD] shall also pay all costs, expenses and attorneys'
> fees which may be incurred or paid by Landlord in enforcing the covenants and
> agreements of this Lease, and all such expenses, costs and attorneys' fees when
> paid by Landlord shall become at once a valid lien upon the improvements at any
> time situated on or in the Demised Premises and upon the leasehold estate hereby
> created, and shall be paid as additional rent hereunder, together with interest
> thereon at the Interest Rate from the date of payment by Landlord until the date
> repaid by [DVD], and shall be paid by [DVD] to Landlord on demand.

Lease Agmt. Art. 26.

Article 18.D.2 provides:

> In case of any termination of this Lease, termination of [DVD's] right of
> possession of the Demised Premises, re-entry by Landlord and/or dispossess by

---

[1] The Court assumes familiarity with its October 2, 2015 decision granting summary judgment
for Thor, *Thor 725 8th Ave. LLC v. Goonetilleke*, No. 14 Civ. 4968 (PAE), 2015 WL 5785087
(S.D.N.Y. Oct. 2, 2015), and draws on that decision herein.  Except where specifically
referenced, no citation to the decision will be made.  The Court further refers to the text of the
Lease Agreement, Dkt. 102, Ex. C ("Lease Agmt."), and Guaranty, Dkt. 102, Ex. B
("Guaranty").

> summary proceedings or otherwise, (a) the Rent, additional rent, and any and all
> other sums payable by [DVD] hereunder shall become due thereupon and be paid
> up to the time of such re-entry, dispossess and/or termination, together with such
> reasonable expenses as Landlord may incur for legal expenses, attorneys' fees,
> brokerage, obtaining possession and/or keeping or putting the Demised Premises
> in good order and preparing the same for re-letting . . . .

*Id.* Art. 18.D.2.

> Finally, Article 17 provides:

> [DVD] shall protect, indemnify, defend, pay, indemnify [sic], save, and hold
> Landlord . . . harmless from and against all liabilities, obligations, claims, fines,
> damages, penalties, causes of action, suits, demands, judgments, costs and
> expenses (including, without limitation, attorneys' fees and disbursements)
> imposed upon or incurred by or asserted against an Indemnified Party of any
> nature whatsoever, howsoever caused, by reason of: . . . iii) any failure on
> [DVD's] part to perform or comply with any of the terms of this Lease . . . .

*Id.* Art. 17.

On December 22, 2003, the Goonetillekes executed the Guaranty.  Under it, the

Goonetillekes:

> jointly and severally unconditionally guarantee[ ] to Landlord . . . the full and
> prompt payment of all amounts payable by [DVD] and the full and timely
> performance and observance of all the covenants, terms, conditions and
> agreements therein provided to be performed and observed by [DVD] under the
> Lease and the unamortized balance of the real estate brokerage commission paid
> by Landlord upon execution of the Lease, as amortized on a straight line basis
> over the entire term of the lease.

Guaranty at 1.

On September 25, 2013, Thor bought the Premises from the prior landlord.  Before

Thor's purchase, DVD and the Goonetillekes assented to the Stipulation and Addendum, which

formally terminated the Lease, but kept its substantive terms and the Guaranty in place.  They

also executed the Guarantors' Certification, Tenant Estoppel Certificate, and Amendment to

Occupancy Agreement ("Amendment"), which collectively reaffirmed that the Goonetillekes'

duties to the prior landlord in their capacity as guarantors were henceforth owed to Thor.

3

DVD's failure to timely pay the November 2013 rent triggered an "Event of Default." On April 24, 2014, after sending two default notices, Thor sent a notice of termination to DVD. DVD failed to timely surrender the premises "vacant and broom clean"—a condition that would have released the Goonetillekes from liability under the Guaranty.

### B.  Procedural History

On July 2, 2014, Thor filed this action against the Goonetillekes for breach of guaranty and costs of enforcement.  Dkt. 2.  On June 12, 2015, after discovery, Thor moved for summary judgment on its breach-of-guaranty claim.  Dkt. 67.  On June 26, 2015, the Goonetillekes cross-moved for summary judgment on that claim.  Dkt. 74.

On October 2, 2015, the Court issued a decision granting Thor's motion for summary judgment on the breach-of-guaranty claim, and denying the Goonetillekes' motion for summary judgment in their favor.  Dkt. 95.  The Court held that the Goonetillekes are liable to Thor for $2,067,288.299 in rent arrears, past-rent reductions, and real-estate taxes.  *Id.* at 32.  On October 14, 2015, the Court set a briefing schedule for Thor's costs-of-enforcement claim.  Dkt. 98.

On October 2, 2015, Thor filed a motion to recover the costs of enforcing the Guaranty, as well as prejudgment interest on the judgment entered by the Court on October 2, 2015.  Dkt. 101 ("Pl. Br.").  Thor's counsel submitted a supporting declaration.  Dkt. 102 ("Matalon Decl."). On October 23, 2015, the Goonetillekes filed a memorandum of law in opposition, Dkt. 105 ("Defs. Br."), as well as a declaration by the Goonetillekes' counsel, Dkt. 106 ("Hoffman Decl.").  On October 30, 2015, Thor filed a reply brief, Dkt. 109 ("Pl. Reply Br."), and a second declaration by Thor's counsel, Dkt. 110 ("Matalon Reply Decl.").  On December 7, 2015, the Goonetillekes filed a sur-reply brief.  Dkt. 113 ("Defs. Sur-reply Br.").

4

## II.      Discussion

This discussion proceeds in three parts.  The Court considers, first, Thor's motion for prejudgment interest on the Goonetillekes' liability; second, Thor's entitlement to fees under the Lease and Guaranty; and third, the reasonableness of Thor's application for fees and costs.

### A.      Prejudgment Interest

Thor seeks prejudgment interest of 9% on the Goonetillekes' $2,067,288.99 liability, from July 2, 2014, the date the action was commenced.  Pl. Br. 9.  Thor is entitled to this amount.

In a diversity action, the awarding of prejudgment interest is a substantive issue, and is thus governed by state law.  *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 434 (S.D.N.Y. 2004) (citing *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999)).  New York law provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract."  N.Y. C.P.L.R. § 5001.

Under § 5001(a), the prevailing party in a breach-of-contract action is entitled to prejudgment interest on its damages "as a matter of right."  *See U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991).  New York's prejudgment interest rate for breach-of-contract cases, where the parties had not agreed to a different rate, is 9% per annum, which accrues on a simple basis.  *See* N.Y. C.P.L.R. § 5004; *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998) (citing *Patane v. Romeo*, 652 N.Y.S.2d 142, 144 (3d Dep't 1997); *Kaufman v. Le Curt Constr. Co.*, 601 N.Y.S.2d 186, 187–88 (2d Dep't 1993)).

Prejudgment interest "shall be computed from the earliest ascertainable date the cause of action existed," which may predate the filing of the complaint.  N.Y. C.P.L.R. § 5001(b).  Here, however, "for simplicity sake [sic]," Thor requests prejudgment interest accruing "from commencement of the action."  Pl. Br. 9 & n.4.

The Goonetillekes argue that prejudgment interest should instead be set as of November 2, 2015, 30 days after the Court granted Thor's motion for summary judgment.  Defs. Sur-reply Br. 3.  For this argument, the Goonetillekes rely on *Caiati of Westchester, Inc. v. Glens Falls Ins. Co.*, 696 N.Y.S.2d 474 (2d Dep't 1999).  But that case is inapt.  There, the insurance policy at issue expressly provided that the defendant was not obliged to pay the disputed amount until 30 days after the appraisal award was made.  *Id*. at 475.  There is no such provision in the Lease or Guaranty here.  Rather, the Lease provides that "[i]n case of any termination of this Lease, . . . the Rent, additional rent, and any and all other sums payable by [DVD] hereunder shall become due *thereupon*."  Lease Agmt. Art. 18.D.2 (emphasis added).  Accordingly, the Court holds that "the earliest ascertainable date the cause of action existed," N.Y. C.P.L.R. § 5001, was May 7, 2014, the date Thor terminated the Lease.

Because Thor's selected start date is, if anything, favorable to the Goonetillekes, the Court awards prejudgment interest beginning on July 2, 2014.

### B.    The Legal Basis for Thor's Asserted Entitlement to Fees

Thor argues that the Guaranty and Lease, read together, oblige the Goonetillekes to reimburse Thor for its attorneys' fees and costs incurred prosecuting this action.  Thor is correct.

### 1.    Applicable Legal Standards

Under New York law, attorneys' fees are treated as "the ordinary incidents of litigation[,] and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule."  *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) (collecting cases).  This "American Rule," *Summit Valley Indus. Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am.*, 456 U.S. 717, 721 (1982), "provides freer and more equal access to the courts . . . [and] promotes democratic and libertarian principles."  *Hollander*, 337

F.3d at 199 (quoting *Mighty Midgets, Inc. v. Centennial Ins. Co*., 47 N.Y.2d 12, 22 (1979)).

Accordingly, while parties may agree that one will indemnify the other for attorneys' fees in

litigation between them, such contracts must be "strictly construed to avoid inferring duties that

the parties did not intend to create." *Id.* (citing *Hooper Assocs., Ltd. v. AGS Computers, Inc*., 74

N.Y.2d 487, 491 (1989)).  "[T]he court should not infer a party's intention to waive the benefit

of the [American Rule] unless the intention to do so is *unmistakably clear* from the language of

the promise." *Hooper Assocs.*, 74 N.Y.2d at 492 (emphasis added).

Courts in this Circuit have articulated various principles to assist in determining whether

an agreement provides with "unmistakable clarity" for the shifting of attorneys' fees incurred in

litigation between the contracting parties.

First, there is a rebuttable presumption that an agreement does not cover such attorneys'

fees.  *In re Refco Sec. Litig.*, 890 F. Supp. 2d 332, 341 (S.D.N.Y. 2012); *see also U.S. Fid. &*

*Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 78 (2d Cir. 2004) ("In the final analysis, it is

the Obligees who bear the heavy burden of persuading us to depart from the American Rule.").

Indemnification provisions will not be construed to cover fees in inter-party actions "if the

contractual language does not expressly refer to or explicitly contemplate such circumstances

and the context does not suggest that the contracting parties were specifically concerned with

prospective litigation between themselves." *Luna v. Am. Airlines*, 769 F. Supp. 2d 231, 244

(S.D.N.Y. 2011).

Second, where suits involving third parties are conceivable, a provision containing only

broad language of indemnity (*i.e.*, a clause that promises indemnification of "all claims,

damages, liabilities, costs and expenses, including reasonable counsel fees") will generally not

support a claim for indemnity for fees incurred litigating inter-party claims.  *See, e.g.*, *Hooper*

*Assocs.*, 74 N.Y.2d at 492; *Broadhurt Invs., LP v. Bank of N.Y. Mellon*, No. 09 Civ. 1154 (PKC), 2009 WL 4906096, at *3 (S.D.N.Y. Dec. 14, 2009).  Where an indemnification agreement contains provisions that appear inapplicable to a suit between the contracting parties (*e.g.*, notice-of-claim or assumption-of-defense provisions), courts are particularly reluctant to infer inter-party indemnity.  *Luna*, 769 F. Supp. 2d at 244 (collecting cases).

Third, where it is clear that no third party claims were contemplated, courts are more willing to construe an indemnity provision to cover claims between the contracting parties.  *In re Refco Sec. Litig.*, 890 F. Supp. 2d at 344; *see, e.g.*, *Breed, Abbott & Morgan v. Hulko*, 74 N.Y.2d 686, 687 (1989) (escrow agent must be indemnified for expenses incurred in litigation with party to escrow agreement, because it was "difficult, if not impossible" to conceive of applicable third-party claims).  Even where third-party claims are conceivable, "when the language of an indemnification provision specifically evidences the parties' intent to cover claims by contracting parties, indemnification for suits against the indemnitor will be enforced."  *In re Refco Sec. Litig.*, 890 F. Supp. 2d at 342.

Accordingly, where a contract distinguishes third-party claims from inter-party claims, courts will infer an intent to cover both types of claims, such that no provisions are rendered superfluous.  *Luna*, 769 F. Supp. 2d at 244 (collecting cases); *In re Refco Sec. Litig.*, 890 F. Supp. 2d at 344; *see also, e.g.*, *Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 146 (S.D.N.Y. 2004) (where special notice-of-claim, assumption-of-defense, and counsel-selection provisions apply only to third-party claims, broad indemnification provision is properly construed as covering claims by contracting parties); *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 651 (S.D.N.Y. 1999) (finding indemnity of inter-party claims where certain provisions of agreement distinguished between inter- and third-party claims).

8

### 2.   Discussion

Applying these principles to the Lease and Guaranty, the Court holds that Thor and the Goonetillekes clearly intended for the Goonetillekes to indemnify Thor for attorneys' fees and costs incurred in an action of this nature.  To arrive at this conclusion, the Court first considers whether the Lease provides, with "unmistakable clarity," for the indemnity of fees and expenses incurred in suits between Thor and DVD to enforce the Lease.  Having answered this question in the affirmative, the Court next addresses whether the Goonetillekes, as guarantors of the Lease, are also liable for DVD's indemnification obligations.

### a.   The Lease Provides for Indemnity of Attorneys' Fees and Costs in Enforcement Actions Between Thor and DVD

Thor argues that Articles 17, 18, and 26 of the Lease each independently oblige DVD to indemnify Thor for attorneys' fees and costs incurred in a suit brought by Thor against DVD to enforce the Lease provisions.  The Court need look no further than Article 26, as it unequivocally provides for such indemnity.[2]

The first clause of Article 26 states:

> [DVD] covenants and agrees that in case Landlord shall be made a party to any litigation commenced against [DVD] or in connection with the Demised Premises, then [DVD] shall pay all expenses, costs and reasonable attorneys' fees and disbursements incurred by or imposed on the Landlord by or in connection with such litigation . . .

Lease Agmt. Art. 26.  Because this language explicitly contemplates third-party claims, it does not, on its own, support an inference that the parties intended to indemnify inter-party claims. *Bourne Co. v. MPL Commc'ns, Inc.*, 751 F. Supp. 55, 57 (S.D.N.Y. 1990); *see also*

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 21 (2d Cir. 1996) (inter-

---

[2] The Court therefore has no occasion to consider whether Articles 17 and/or 18 would independently support Thor's claim for indemnity here.

party fees not indemnified where indemnification provision "may easily be read as limited to third party actions"); *Goshawk Dedicated Ltd. v. Bank of N.Y.*, No. 06 Civ. 13758 (MHD), 2010 WL 1029547, at \*9 (S.D.N.Y. Mar. 15, 2010) ("[T]he potential for third-party claims means that the contractual indemnification provisions cannot definitively be read to refer to non-third-party claims, and thus the parties' intent to indemnify such claims is not unmistakably clear.").  The Goonetillekes, therefore, seize upon this language to argue that Article 26's sole purpose is to compensate Thor in the event that Thor either is sued together with DVD for a breach of DVD's obligations under the Lease, or incurs expenses in connection with such third-party litigation. *See* Defs. Br. 6.

> Crucially, however, Article 26 does not end there.  Rather, it continues:
>
> and [DVD] shall also pay all costs, expenses and attorneys' fees which may be incurred or paid by Landlord in enforcing the covenants and agreements of this Lease . . .

Lease Agmt. Art. 26.  This clause expressly covers an action by Thor in which it seeks to enforce the terms *of the Lease*.  Such a suit could be brought only against DVD as tenant (or, as discussed below, against the Goonetillekes as guarantors).  Because it is "difficult, if not impossible" to conceive of how this clause might apply to third-party claims, *Breed, Abbott*, 74 N.Y.2d at 687, the clause is properly construed as referring "exclusively [and] unequivocally . . . to claims between the parties themselves."  *Hooper Assocs.*, 74 N.Y.2d at 492.

This interpretation is bolstered by the structure of Article 26, which specifically distinguishes between third-party suits (addressed in the first clause), and enforcement suits (addressed in the second).  Under these circumstances, the Court must read Article 26 as covering both types of claims, so that "neither clause is superfluous."  *Luna*, 769 F. Supp. 2d at 244; *see also Sagittarius Broad. Corp. v. Evergreen Media Corp.*, 663 N.Y.S.2d 160, 161 (1st Dep't 1997) ("[T]he first sentence of the subject clause cannot reasonably be interpreted as

limited to third-party claims, particularly in view of the second portion of that clause, which clearly pertains to third-party actions, thereby rendering the first part mere surplusage were it only applicable . . . to third-party actions.").

The Court therefore holds that Article 26 obliges DVD to reimburse Thor for costs incurred in a lawsuit to enforce the Lease. Here, following DVD's default, Thor brought such a suit to recover rent arrears, recoupment of rent reductions, and recoupment of real-estate tax payments—each of which is due to Thor under the Lease. This lawsuit, therefore, is of precisely the type contemplated by the parties in drafting and binding themselves to Article 26.

The Goonetillekes argue that, even if Article 26 covers litigation expenses for enforcement suits brought by Thor during the lease term, it does not extend to any such costs incurred post-termination. Defs. Br. 6. But nothing in the Lease suggests that DVD's duty to indemnify Thor for enforcement-related expenses expires upon termination of the Lease.[3] On the contrary, Article 18.E expressly provides that "[n]o expiration or termination of this Lease . . . shall relieve [DVD] of *any* of its liabilities and obligations hereunder." Lease Agmt. Art. 18.E (emphasis added). This provision refutes the Goonetillekes' notion that termination of the Lease relieved DVD of its duty, under Article 26, to indemnify Thor for the costs of the suit it brought to collect the money it was due thereunder.[4]

---

[3] Contrary to the Goonetillekes' claim, Article 26's characterization of these expenses as "additional rent," which shall become a "lien upon the improvements . . . on . . . the Demised Premises," Lease Agmt. Art. 26, does not make recovery of such expenses conditional on "continued occupancy." *See* Defs. Br. 6. Article 18.D.2 expressly provides for the recoupment of "additional rent" following termination of the Lease. Lease Agmt. Art. 18.D.2. There is no reason to conclude that a lien upon improvements would extinguish upon termination.

[4] In light of Article 18.E's blanket survival clause, the Court rejects the Goonetillekes' argument that the absence of such a clause in Article 26 precludes indemnity for post-termination litigation expenses. *See* Defs. Br. 6.

The Goonetillekes finally argue that even if Article 26 obliges DVD to reimburse costs incurred in a suit against DVD to enforce the Lease, it does not require DVD to indemnify the costs of litigation against the Goonetillekes to enforce the Guaranty.  Defs. Br. 7.  This argument fails, however, because a suit to enforce the Guaranty is, effectively, a suit to enforce the provisions of the Lease.  The Guaranty's sole purpose is to ensure that, in the event DVD defaults, Thor has someone from whom to seek the amounts prescribed by "covenants and agreements of [the] Lease."  Lease Agmt. Art. 26.  In suing the Goonetillekes, Thor seeks only what is owed to it by DVD under the Lease—rent arrears, rent reductions, and real-estate tax payments.  Accordingly, the Court holds that the indemnity provision of Article 26 applies to suits brought by Thor under the Guaranty, as well as those brought directly against DVD under the Lease.[5]

### b. The Guaranty Extends Liability for Attorneys' Fees and Costs of Enforcement to the Goonetillekes

The Court next considers whether the Guaranty makes the Goonetillekes responsible for DVD's obligations to Thor under Article 26 for costs incurred enforcing the Guaranty.

The Goonetillekes argue that Thor cannot recover fees or costs of enforcement under the Guaranty because the Guaranty does not explicitly mention indemnity for such expenses.  Defs. Br. 4.  But the Guaranty provides categorically that the Goonetillekes are responsible for the "full and prompt payment of *all amounts payable* by [DVD]."  Guaranty at 1 (emphasis added).

---

[5] The Goonetillekes argue that the Amendment's silence on the issue of attorneys' fees defeats an inference that the parties intended for inter-party indemnity.  *See* Defs. Br. 14–15.  But the Amendment expressly provides that the Lease, Stipulation, and Addendum "represent[ ] the entire agreement between the parties as to the Premises," except as modified by the Amendment itself.  Dkt. 65, Ex. 7.  Because the Amendment was not intended to supersede the Lease, the absence of a provision there governing attorneys' fees does not override Article 26's provision for such indemnification.

These amounts necessarily include the costs of enforcement.  The Court has held that Article 26
provides, with unmistakable clarity, that DVD is obliged to indemnify Thor for "all costs,
expenses and attorneys' fees" sustained in connection with suits brought to enforce both the
Lease and the Guaranty.  Lease Agmt. Art. 26.  It follows that litigation expenses incurred by
Thor in enforcing the Guaranty represent an "amount[ ] payable by [DVD]," *id.*, for which the
Goonetillekes have guaranteed "full and prompt payment," Guaranty at 1.[6]

The Court, therefore, holds that the Goonetillekes are liable to Thor for reasonable
attorneys' fees and costs incurred in the prosecution of this action.

### C.    Determination of a Reasonable Award of Fees and Costs

The Court next assesses the reasonableness of the award Thor requests.  *See Antidote
Int'l Films, Inc. v. Bloomsbury Pub., PLC*, 496 F. Supp. 2d 362, 364 (S.D.N.Y. 2007) (quoting
*F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987) (where a
contract provides for indemnity of attorneys' fees between the parties, the Court should order the
obligor to pay "whatever amounts have been expended by the prevailing party, *so long as the
amounts are not unreasonable*" (emphasis added)).

---

[6] The Goonetillekes argue that "[t]he failure of the guaranty clause to include the obligation to
pay costs of litigation between the parties, while specifying the duty to pay brokerage fees,
evinces an intention to limit the obligation to that which is specified." Defs. Br. 5.  That claim,
too, fails.  The Guaranty does state that the Goonetillekes guarantee "full and prompt payment"
of the "unamortized balance of the real estate brokerage commission paid by Landlord upon
execution of the Lease." Guaranty at 1.  But, unlike attorneys' fees incurred enforcing the Lease
provisions (and brokerage fees and expenses incurred by Thor in connection with reletting the
Premises, *see* Lease Agmt. Arts. 18.D.2, 18.F), the unamortized balance of the brokerage
commission is not an "amount[ ] payable by [DVD]" under the Lease, Guaranty at 1.  Thus, the
reference to brokerage fees constitutes not "limiting language," Defs. Br. 5 (citing *Commander
Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 54 (2d Cir. 1993)), but rather an additional
amount for which the Goonetillekes may be held liable.

Thor seeks $320,553.03 ($309,212 in attorneys' fees and $11,341.03 in costs) for the work of the law firm of Matalon Shweky Elman PLLC ("MSE"), which represents Thor in this action.  Pl. Reply Br. 12; Matalon Reply Decl. ¶¶ 12–13.  The Goonetillekes argue that the proposed award is excessive and unreasonable, challenging both the hourly rates and billing practices of Thor's counsel, and arguing that Thor seeks reimbursement for certain categories of non-compensable fees.  Defs. Br. 15–24; Hoffman Decl. ¶¶ 2–22.

The Court's analysis proceeds in two steps.  First, the Court reviews the standards governing awards of fees and costs.  Next, the Court addresses the Goonetillekes' specific objections to Thor's fee application, and, finding merit to some, reduces the proposed fee award accordingly.

### 1.      Applicable Legal Standards

In determining the amount of a fee award, district courts are to calculate the "presumptively reasonable fee."  *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009).  The starting point for determining the presumptively reasonable fee is the "lodestar" amount, "which is the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Gaia House Mezz LLC v. State Street Bank & Trust Co.*, No. 11 Civ. 3186 (TPG), 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014) (quoting *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)) (internal quotation marks omitted).  The reasonableness of hourly rates are guided by the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The relevant community is this District.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190–91 (2d Cir. 2008).

14

In resolving what rate a reasonable paying client would be willing to pay, the Court is to consider, *inter alia*, the "*Johnson* factors," namely:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 493 F.3d 110, 114 n.3, 117–18 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Exp., Inc*., 488 F.2d 714, 717–19 (5th Cir. 1974)), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008).  The Court "should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Id.* at 118.

"[T]he fee applicant . . . bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed."  *Allende v. Unitech Design, Inc*., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).  To that end, the fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

A claimant is only to be compensated for "hours reasonably expended on the litigation," and not for hours "that are excessive, redundant, or otherwise unnecessary."  *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).  Where the number of hours stated is greater than should have been required for the work performed, the Court should reduce the stated hours accordingly.  *Seitzman v. Sun Life Assurance Co. of Can.*, 311 F.3d 477, 487 (2d Cir. 2002).  Where it is difficult for the Court to make line-item reductions to adjust for excessive billing,

"the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999) (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)) (internal quotation marks omitted); *see Carey*, 711 F.2d at 1142, 1146 (allowing percentage reductions to correct for deficiencies in fee application, including "excessive claims for certain tasks" and "inadequate detail in documentation").

Finally, "[a]ttorneys['] fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Rhodes v. Davis*, No. 08 Civ. 9681 (GBD), 2015 WL 1413413, at *4 (S.D.N.Y. Mar. 23, 2015) (quoting *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). As with attorneys' fees, the requesting party must substantiate the request for costs. *See CJ Prods. LLC v. Your Store Online LLC*, No. 11 Civ. 9513 (GBD), 2012 WL 4714820, at *2 (S.D.N.Y. Oct. 3, 2012) (denying reimbursement for undocumented costs). Court fees that are reflected on the Court's docket are sufficiently substantiated, as are costs for which a claimant provides extrinsic proof, such as invoices or receipts. *See Abel v. Town Sports Int'l LLC*, No. 09 Civ. 10388 (DF), 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 16, 2012). A sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items is also sufficient. *Id.*

### 2.    Discussion

The Goonetillekes raise three main objections to Thor's fee application. First, they contend that the hourly rates charged by Thor's counsel are excessive and out of line with rates commonly approved in this District. Defs. Br. 16–22; Hoffman Decl. ¶¶ 2–8. Second, they argue that the Invoice is inflated and unreasonable because it: (1) includes billing for "fees on fees"; (2) contains entries for work unrelated to this lawsuit; and (3) reflects duplicative labor,

16

overstaffing, and block-billing.  Defs. Br. 22–24; Hoffman Decl. ¶¶ 9–19; Defs. Sur-reply Br. 1–2.  Finally, they dispute Thor's request for costs on the ground that Thor has not adequately documented certain categories of disbursements.  Hoffman Decl. ¶ 20; Defs. Sur-reply Br. 2.

For the reasons that follow, the Court holds that reductions to MSE's requested rates and stated hours are indeed warranted, although not to the extent pursued by the Goonetillekes.

### a.    Hourly Rates

Thor seeks to recover fees for the work of one partner, one counsel, two associates, and three paralegals at MSE, a boutique litigation firm comprised of 10 attorneys.  Matalon Decl. ¶¶ 4, 16–20; *see generally* Matalon Decl., Ex. A. ("Invoice").  Joseph Lee Matalon, a founding partner of MSE with 26 years of litigation experience, billed Thor at a rate of $695 per hour. Matalon Decl. ¶¶ 1, 2, 4, 16.  Yosef Rothstein, a counsel with 15 years of legal experience, billed Thor at a rate of $595 per hour.  *Id.* ¶¶ 15, 17.  David N. Levy, an associate with five years of litigation experience, billed Thor at a rate of $475 per hour.  *Id.* ¶¶ 11, 12, 16.  Kristin Rosenblum, an associate with an unspecified amount of experience, billed Thor at a rate of $425 per hour.  *Id.* ¶¶ 15, 17.  Allen Mukaida, a paralegal with over 20 years' experience, billed Thor at a rate of $185 per hour.  *Id.* ¶¶ 14, 16.  Finally, Morris Kishk and Jack Wu, part-time paralegals with unspecified amounts of experience, billed Thor at rates of $80 and $95 per hour, respectively.  *Id.* ¶¶ 15, 17.  The Court agrees with the Goonetillekes that these rates are all higher than those typically approved for similarly experienced attorneys and paralegals in this District, and that Thor has not satisfactorily justified this upward deviation.

As a threshold matter, based on the relevant factors—including the difficulty of the questions involved, the duration and trajectory of the litigation, and the lawyers' experience, ability and reputation, *see Antidote Int'l Films*, 496 F. Supp. 2d at 364—this case is not one in

which higher than ordinary rates are warranted.  It is a garden-variety breach-of-contract case.  It did not implicate exceptionally challenging questions of either law or fact.  Nor were there hotly contested damages determinations; rather, the parties, for the most part, stipulated to the amount of damages due under the Lease—the only question was whether the Goonetillekes had been relieved of their duty to pay that amount.  Further, relatively few documents were exchanged in discovery, only four depositions were held, the case did not proceed to trial, and the motions for summary judgment were resolved within 15 months of the commencement of the action.  Thor's reliance here on intellectual property cases such as *Beastie Boys v. Monster Energy Co.*, No. 12 Civ. 6065 (PAE), 2015 WL 3823924 (S.D.N.Y. June 15, 2015), and *Broad. Music, Inc. v. Pamdh Enters., Inc.*, No. 13 Civ. 2255 (KMW), 2014 WL 2781846 (S.D.N.Y. June 19, 2014), is, therefore, misplaced.  In those cases, the Court found counsel's high rates justified by the "demanding and complex" nature of the litigation, and the attorneys' specialized expertise in intellectual property law.  *Beastie Boys*, 2015 WL 3823924, at \*20–21.  Indeed, the former of those cases was the subject of a hard-fought trial involving extensive and challenging motions practice before, during, and after trial.  *See id.* at \*2–4.  In contrast, the circumstances of this relatively routine commercial landlord-tenant dispute present no basis for departing from the generally accepted rates in this District.

The Court is quite unpersuaded by Thor's argument that the proposed rates should be approved because, until October 2015, the fees sought by MSE were "actually charged to, and fully paid by" Thor.  Pl. Br. 6 (citing *Broadcast Music*, 2014 WL 2781846, at \*6).  On a fee-shifting application, the governing test of reasonableness is objective: whether the plaintiff "spen[t] the minimum necessary to litigate the case effectively."  *Simmons*, 575 F.3d at 174 (citation omitted).  It is not dictated by a particular client's subjective desires or tolerance for

spending. *See Simmonds v. N.Y.C. Dep't of Corr.*, No. 06 Civ. 5298 (NRB), 2008 WL 4303474, at *4 (S.D.N.Y. Sept. 16, 2008) (reducing fee award where "a reasonably thrifty client made aware of the adequacy of [plaintiff's] core claims would have opted for less costly representation"). Skepticism of the rates proposed here is particularly merited in light of the fact that MSE's Matalon is also a principal of Thor. Dkt. 39 (transcript of 2/11/2015 proceeding), at 23. That Thor opted to pay the high rates requested by MSE does not mean that the Goonetillekes should be required to reimburse fees that exceed those which, based on the standards reflected in case law in this District, a reasonable objective client would be willing to pay.

Accordingly, the Court will reduce the proposed rate of each MSE timekeeper to comport with the prevailing rates in this District for "similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895.

"In the Southern District of New York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases." *Watkins v. Smith*, No. 12 Civ. 4635 (DLC), 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015) (collecting cases); *see also Verizon Directories Corp. v. AMCAR Transp. Corp.*, 05 Civ. 08867 (GBD), 2008 WL 4891244, at *5 (S.D.N.Y. Nov. 12, 2008) (hourly rate of $300 reasonable for associate with "several years" of experience in "commercial litigation," and rates of $425 and $525 reasonable for partners with "extensive experience"); *Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (rates of $425 per hour for senior partner and $300 for associates, in breach-of-contract case, were reasonable); *M.L. ex rel. M.P. v. Bd. of Educ. of N.Y.C.*, 02 Civ. 4288 (SHS), 2003 WL 1057476 at *3 (S.D.N.Y. Mar. 10, 2003) (awarding hourly rate of $350–375 to lawyer with 18 years of litigation experience). Based on its review of comparable cases, and considering Matalon's and

Rothstein's relevant experience, the Court finds hourly rates of $450 and $375, respectively, appropriate.

As to Levy and Rosenblum, the Court approves a reduced rate of $275 per hour. Courts in this District have found rates of $125–300 per hour reasonable for associates, depending on, *inter alia*, their level of experience. Specifically, "[c]ourts in this district have awarded a rate of $300 per hour for senior associates with at least eight years of experience," and "typically award rates in the range of $125–215 to associates with three years of experience or less." *Apolinario v. Luis Angie Deli Grocery Inc.*, No. 14 Civ. 2328 (GHW), 2015 WL 4522984, at *3 (S.D.N.Y. July 27, 2015) (collecting cases). The Court finds an hourly rate of $275 for Levy reasonable in light of his five years of experience and the considerable responsibility he assumed in this action—indeed, Levy billed more than 53% of the total hours worked on this case, and performed high level tasks, such as taking depositions and principally drafting Thor's summary judgment briefs. *See* Matalon Decl. ¶¶ 16, 20; Matalon Reply Decl. ¶ 12; *see generally* Invoice. As to Rosenblum, MSE's website indicates that she launched her professional career at Dewey & LeBoeuf in 2005 and joined MSE in 2009, which suggests that she has some 10 years of legal experience. *See Attorney Bios* (Dec. 8, 2015, 3:39 PM), http://www.mselaw.com/attorney-bios/associates/kristin-r-rosenblum. However, because Rosenblum worked only 8.5 hours on this matter (which perhaps explains the discrepancy between her and Levy's requested rates), Matalon Decl. ¶ 20, the Court finds an hourly rate of $275 reasonable for her, as well.

As to Mukaida, the Court approves a rate of $150 per hour. "In this District, the market value for paralegals' time ranges from $50 to $150 per hour depending on experience levels." *Spalluto v. Trump Int'l Hotel & Tower*, No. 04 Civ. 7497 (RJS), 2008 WL 4525372, at *14 (S.D.N.Y. Oct. 2, 2008) (collecting cases); *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ.

6048 (GEL), 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) (same).  The Court finds a rate at the top of this range appropriate given Mukaida's 20 years of experience and the considerable amount of work he performed on this matter.  *See* Matalon Decl. ¶¶ 16, 20.  In contrast, the Court approves a reduced rate of $75 per hour for Kishk and Wu, as to whose background and relevant experience Thor has provided no information.  *See Spalluto*, 2008 WL 4525372, at *14 (reducing proposed rate of $115 to $75 where information regarding paralegal's background and experience was not provided); *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362 (S.D.N.Y. 2005) (reducing requested rate of $125 to $75 where plaintiff failed to submit information about paralegal's experience).

### b.      Reasonableness of Billing Records and Practices

Thor seeks compensation for 707.3 hours billed by MSE timekeepers in connection with this action.  *See* Matalon Decl. ¶ 20; Matalon Reply Decl. ¶ 12.  To support this request, Thor's counsel submitted an Invoice that details the tasks performed and the hours worked by each timekeeper who worked on the case between March 25, 2014 and October 30, 2015.

The Goonetillekes challenge the Invoice on several grounds.  First, they argue that costs incurred in connection with the present motion or work unrelated to this litigation should be stricken from Thor's fee application. Defs. Br. 23–24; Hoffman Decl. ¶¶ 12–17.  Additionally, they argue that the Court should make a 35% across-the-board reduction to account for various ostensibly improper staffing and billing practices reflected in the Invoice.  Defs. Br. 22–23; Hoffman Decl. ¶¶ 9–11, 21.  The Court addresses these challenges in turn.

### i.      *Work performed in connection with Thor's fee application*

In its initial application, Thor included in its calculation of compensable expenses $8,560 in fees, reflecting 16.4 hours of work performed in connection with the present motion.  *See*

Invoice at 30–31 (time entries for work performed between October 7, 2015 and October 30, 2015 in relation to the fee application).  In its reply, Thor seeks an additional $26,612 in fees (reflecting 62.2 hours of work by Matalon, Levy, and Mukaida) incurred in November 2015. Matalon Reply Decl. ¶¶ 12, 13; Pl. Reply Br. 12.  The Goonetillekes contend that an award of such "fees on fees" is not appropriate.  Defs. Br. 23–24; Hoffman Decl. ¶¶ 15–16; Defs. Sur-reply Br. 1.  The Goonetillekes are correct.

"Under New York law, 'a general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves.'"  *St. Paul Mercury Ins. Co. v. M & T Bank Corp.*, No. 12 Civ. 6322 (JFK), 2014 WL 1468452, at \*5 (S.D.N.Y. Apr. 11, 2014) (quoting *F.H. Krear*, 810 F.2d at 1266).  Although parties may explicitly contract for such an allowance, "as it is an agreement contrary to what is usual, specific language would be needed to show such an agreement."  *F.H. Krear*, 810 F.2d at 1267 (quoting *Swiss Credit Bank v. Int'l Bank, Ltd.*, 200 N.Y.S.2d 828, 831 (Sup. Ct. N.Y. County 1960)); *see Soberman v. Groff Studios Corp.*, No. 99 Civ. 1005 (DLC), 2000 WL 1010288, at \*2–3 (S.D.N.Y. July 21, 2000) (plaintiff not entitled to reimbursement of fees incurred in relation to fee application where lease did not contain specific language providing for reimbursement for fees on fees); *U.S. for Use of Fid. & Deposit Co. of Md. & Fid. v. Suffolk Const. Co.*, No. 96 Civ. 2413 (JFK), 2000 WL 10412, at \*3 (S.D.N.Y. Jan. 3, 2000) (same); *Banca Della Svizzera Italiana v. Cohen*, 756 F. Supp. 805, 809–10 (S.D.N.Y. 1991) (same).

Here, neither the Lease nor the Guaranty contains "specific language" that would support Thor's request for fees on fees.  *See, e.g.*, *F.H. Krear*, 810 F.2d at 1267 (general provision that prevailing party would "have the right to reimbursement of reasonable attorney's fees" not specific enough to support fees on fees); *Suffolk Const. Co.*, 2000 WL 10412, at \*3 (language not

sufficiently specific where agreement provided only that plaintiff shall recover "all legal fees and expenses" incurred).  Each case relied on by Thor involves a right to attorneys' fees created by statute, often to further public policy considerations.  *See* Pl. Reply Br. 8 (citing *Gagne v. Maher*, 594 F.2d 336 (2d Cir. 1979) *aff'd*, 448 U.S. 122 (1980) (42 U.S.C. § 1988); *Senfeld v. I.S.T.A. Holding Co.*, 652 N.Y.S.2d 738 (1997) (N.Y. Real Property Law § 234); *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 672 N.Y.S.2d 230 (Sup. Ct. N.Y. County 1997) (N.Y. City Admin. Code § 8-502(f))).  "Those cases are not applicable here."  *Soberman*, 2000 WL 1010288, at *2–3 (rejecting request for fees on fees in contract-based lawsuit); *see St. Paul Mercury Ins. Co.*, 2014 WL 1468452, at *5 (fee applications in statute-based actions are "inapposite" to applications brought in contract actions).

The Court, therefore, excludes from the fee award all fees incurred in connection with the present motion.[7]

### ii.     Work unrelated to this litigation

The Goonetillekes also argue that the Invoice improperly includes seven time entries for work unrelated to this litigation.  Hoffman Decl. ¶¶ 12–14; Hoffman Decl., Ex. B (identifying each time entry for purportedly unrelated work).  The first six of these entries involve research into the statute of frauds, assets and mortgages, the erroneous date rule, and estoppel and waiver.  *See* Hoffman Decl., Ex. B, at 1–4.  Thor has satisfactorily explained the relevance of this work to

---

[7] Thor's bid for post-application fees fails for a separate reason:  Thor has not submitted contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done" during this time period.  *Carey*, 711 F.2d at 1148; *see* Matalon Reply Decl. ¶ 12 (stating that Matalon, Levy, and Mukaida billed additional hours in November 2015, but that invoices documenting this work "have not yet been generated").

this action.  The fees incurred are, therefore, properly borne by the Goonetillekes.[8]  In its reply,
Thor concedes that the seventh time entry, corresponding to work by Mukaida on July 13, 2015
for which Thor paid $296 in fees, represents work unrelated to this litigation.  Pl. Reply Br. 7;
Matalon Reply Decl. ¶¶ 4, 9.  The Court, therefore, deducts this amount from the fee award.

<em>iii.      Allegedly improper staffing and billing practices</em>

The Goonetillekes argue that a 35% across-the-board reduction of the requested fee
award is appropriate in light of ostensible "inflated, duplicative and excessive entries."  Hoffman
Decl. ¶ 21; Defs. Br. 22–23.  However, the Goonetillekes fail to point to a single specific time
entry to support this claim.  Rather, they note only that the hours expended by Thor's counsel
exceeded those spent by defense counsel, that Matalon seeks reimbursement for "time that could
have easily been delegated to an associate," and that both Matalon and Levy attended routine
pretrial and status conferences.  *See* Defs. Br. 16–17; Hoffman Decl. ¶ 5.

Without more, the fact that Thor's counsel expended significantly more hours on this
litigation than defense counsel does not show that the time worked by Thor's counsel was
excessive.  The work expended by the Goonetillekes' counsel is not the measure of objective
reasonableness.

The Court is also unpersuaded by the Goonetillekes' argument that Matalon improperly
performed tasks that could have been delegated to an associate.  On the contrary, this case is a far
cry from those where the work performed by claimant's counsel was "extraordinarily partner-
heavy."  *Beastie Boys*, 2015 WL 3823924, at *15 (reduction of fee award appropriate where firm

---

[8] *See* Pl. Reply Br. 7; Matalon Reply Decl. ¶¶ 6–8 (statute of frauds research was performed in
connection with a discovery dispute; research regarding the Goonetillekes' assets and mortgages
was necessary to evaluate the feasibility of prosecuting this action; and erroneous date rule and
estoppel/waiver research was related to the validity of Thor's notice to terminate the Lease).

billed nearly 2.5 times as many partner hours as associate hours).  The record reflects that the majority of work on this matter was performed by more junior attorneys:  Matalon, the only partner staffed on the case, billed 132.7 hours—representing less than 19% of the 707.3 total hours billed.  *See* Matalon Decl. ¶ 20; Matalon Reply Decl. ¶ 12.  In contrast, the two associates on the case billed nearly 55% of the hours.  *Id.*  It is also reasonable that both Matalon, as the partner on the case, and Levy, as the associate who performed the most work on it, attended conferences before the Court.  *See Beastie Boys*, 2015 WL 3823924, at *19.

Moreover, in the Court's assessment, the fee application reflects a concerted effort on the part of Thor to prune the charges to be shifted to the Goonetillekes, so as to avoid excess.  The Invoice reflects three time entries for which Thor does not seek reimbursement, including one inadvertent duplicate entry that was credited to Thor, and two that involved research of issues that were ultimately deemed unnecessary.  *See* Matalon Decl. ¶ 20 n.1.  Thor's counsel further represents that, during the representation, he frequently wrote off hours from draft invoices for Thor for time that he viewed as excessive.  *Id.* ¶ 9; Matalon Reply Decl. ¶ 2; *id.*, Ex. A (reflecting elimination of 38.2 hours worked by Levy, and four hours worked by Kishk).

That said, at the margin, some excess may be noted.  There are still some entries that appear to reflect arguably disproportionate amounts of time spent for the task performed.  For instance, between August 13, 2015 and September 2, 2015, Levy billed a total of 19 hours (distributed across 13 time entries) reviewing documents to prepare for oral argument.  *See* Invoice at 29–30.  While the Court does not doubt the MSE attorneys actually invested the amount of time recorded for each task, the Court is unpersuaded that the Goonetillekes must bear the costs of any undue labor.

25

The Goonetillekes also argue that a reduction is warranted because block billing on the Invoice precludes the Goonetillekes from assessing whether the hours that MSE expended on certain days were duplicative or unnecessary.  Defs. Br. 22–23; Hoffman Decl. ¶ 10.  To support this claim, the Goonetillekes provide a compilation of all such entries.  Hoffman Decl., Ex. A.

As a general rule, block billing—defined as "grouping multiple tasks into a single billing entry, so as to leave unclear how much time was devoted to each constituent task," *Themis Capital v. Dem. Rep. Congo*, No. 09 Civ. 1652 (PAE), 2014 WL 4379100, at *6 (S.D.N.Y. Sept. 4, 2014)—is disfavored.  That is because this practice impedes both the client's ability to understand the precise time allocable to the tasks for which it is being billed, and, in the event of a later fee application, the court's ability to assess whether the time expended on any given task was reasonable.  *See Green v. City of New York*, 403 Fed. App'x. 626, 630 (2d Cir. 2010) (summary order); *Ramirez v. Benares Indian Rest. LLC*, No. 14 Civ. 7423 (JMF), 2015 WL 926008, at *2 (S.D.N.Y. Mar. 4, 2015) (collecting cases).

However, block billing does not automatically preclude recovery for the hours billed. Courts have generally made reductions in block-billed hours in situations where (1) there was reason to believe that the hours billed were independently unreasonable; (2) the block-billing involved aggregating tasks that were not all compensable; or (3) the number of hours block-billed together was so high (*e.g.*, five hours or more) as to create an unacceptable risk that the aggregated total exceeded reasonable hours worked on compensable projects.  *Adusumelli v. Steiner*, Nos. 08 Civ. 6932, 09 Civ. 4902, 10 Civ. 4549 (JMF), 2013 WL 1285260, at *4 (S.D.N.Y. March 28, 2013); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010) ("While block billing is disfavored and may lack the specificity for an award of attorneys' fees, it is not prohibited as long as the court can determine the reasonableness of the

work performed." (citation omitted)); *see also Abdell v. City of New York*, No. 05 Civ. 8453 (RJS), 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015) (finding block billing unproblematic where it was "for temporally short entries combining related tasks"); *Charles v. City of New York*, No. 13 Civ. 3547 (PAE), 2014 WL 4384155, at *5–6 (S.D.N.Y. Sept. 4, 2014) (reducing fee award based on block billed entries spanning between 5–10 hours each).

Here, the vast majority of time entries that the Goonetillekes identify as block billing were for less than four hours, and many were for less than one hour. *See generally* Hoffman Decl., Ex. A. Indeed, the entire 31-page Invoice contains only 13 entries documenting five or more hours of work, two of which include the taking of depositions, which inherently consume considerable amounts of time. *See* Invoice at 13 (2/3/2015 time entry by JLM), 16 (3/17/2015 time entry by DNL). And two of the longer block-billed entries contain a breakdown of time allocable to each task listed in the entry, eliminating any fair basis for critique. For example, on July 20, 2015, Levy billed 7.9 hours for:

> Research regarding frustration, timeliness, conditions and revise sections of brief regarding same (7.5). Revise 56.1 statement regarding broom clean (.2). Conferences with A. Mukaida regarding cite check and table of authorities (.2).

Invoice at 27; *see also id.* at 28 (7/23/2015 time entry by DNL). Moreover, most of the challenged entries contain enough detail and specificity to afford reasonable confidence that the time billed was productively spent.

There are instances, however, where the time entries lack specificity and combine activities that may be compensable at different rates. For example, on July 2, 2014, Mukaida billed 7.5 hours for:

> Prepare summons and complaint; prepare draft 7.1 Statement; prepare draft civil case cover sheet; request check for SDNY filing fees; travel to SDNY to file case opening documents; travel to DVD depot to serve summons and complaint; conferences with DL; emails to JLM and DL; update files; prepare pdfs for

emailing to SDNY case opening clerk.

*Id.* at 3.

Notwithstanding these limited exceptions, the Court's judgment is that, overall, the "commingling of activities within one time entry" in this case does not "impede[ ] the [C]ourt's efforts to evaluate the reasonableness of any of the listed activities." *Berry v. Deutsche Bank Trust Co. Americas*, 632 F. Supp. 2d 300, 306 (S.D.N.Y. 2009).

All things considered, the Court concludes that some basis exists for a slight reduction of the requested fee award due to mild instances of improper block and duplicative billing. However, under the circumstances, and in light of precedent in this District, the Court deems a 10% reduction, rather than the proposed 35% reduction, sufficient to redress any excessive entries. *See Themis Capital*, 2014 WL 4379100, at *6 (applying 10% across-the-board reduction to account for staffing inefficiencies and "occasional (but far from widespread) instances of block billing[ ] or vague time entries," and 20% reduction for time entries of two attorneys who engaged in frequent block billing); *Abeyta v. City of New York*, No. 12 Civ. 5623 (KBF), 2014 WL 929838, at *5 (S.D.N.Y. Mar. 7, 2014) (10% reduction appropriate to compensate for "vague" entries).

### c.    Costs

Thor seeks $11,341.03 in disbursements, arising primarily from its ordering of court and deposition transcripts, photocopying and printing, courier services, FedEx, investigations into the Goonetillekes' assets, and online legal research.  Pl. Br. 9, 10; Matalon Decl. ¶ 21.  To support this request, Thor's counsel submitted an itemization of costs incurred over the course of this action.  *See* Invoice at 31–32.  The itemization does not include any costs incurred in connection with the present fee application.

The Goonetillekes contend that Thor should not be reimbursed for certain disbursements because it failed to provide adequate documentation of these expenses.  Specifically, the Goonetillekes take issue with Thor's request for $1,500 for "Investigation Services on 3/10/15" and $5,078 in Westlaw research, which the Goonetillekes argue reflects an improper attempt to recoup the total of MSE's monthly research plan.  Hoffman Decl. ¶ 20.

In response, Thor supplemented its application for costs with a receipt Thor received for the asset investigation.  Matalon Reply Decl. ¶ 11; *id.*, Ex. B.  And, in his reply declaration, Thor's counsel represents that the Invoice reflects only the portion of MSE's Westlaw expenses attributable to Thor, and that online legal research expenses are not accounted for in MSE attorneys' hourly rates.  Matalon Reply Decl. ¶ 10.  The Court finds this documentation sufficient, *see Abel*, 2012 WL 6720919, at *34 (statement of costs incurred, made under penalty of perjury in declaration, constitutes adequate documentation), and thus includes these charges in Thor's fee award, *see Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 547 (S.D.N.Y. 2008) (online legal research expenses are recoverable as a component of attorneys' fees, where regularly billed separately to paying clients).

The Goonetillekes do not challenge Thor's request for the remaining expenses, and the Court finds them adequately documented, reasonable, and of the type commonly reimbursed by courts in this district.  *See, e.g.*, *Nautilus Neurosciences, Inc. v. Fares*, No. 13 Civ. 1079 (SAS), 2014 WL 1492481, at *4 (S.D.N.Y. Apr. 16 2014) (awarding costs for court fees, administrative fees, photocopying, and legal research expenses); *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13 Civ. 6667 (PAE), 2015 WL 5122530, at *1 (S.D.N.Y. Aug. 31, 2015) (awarding costs for filing fees, proof of service, court reporter services, and interpreter costs).  The Court, therefore, awards Thor's counsel a total of $11,341.03 in costs.

### d.    The Proper Amount of the Fee Award

Considering all of the above factors, the Court awards Thor a total fee award of $165,544.78, rather than the $309,212 requested.  This includes $154,203.75 in attorneys' fees and $11,341.03 in costs.  The fees component of the award reflects the following calculation[9]:

| Timekeeper | Hourly Rate | Hours Billed | | Total |
|---|---|---|---|---|
| Joseph Lee Matalon | $450 | | 122.1 | $54,945 |
| David N. Levy | $275 | | 327.5 | $90,062.50 |
| Kristin Rosenblum | $275 | | 8.5 | $2,337.50 |
| Yosef Rothstein | $375 | | 5.2 | $1,950 |
| Allen Mukaida | $150 | | 130.1 | $19,515 |
| Morris Kishk | $75 | | 23.9 | $1,792.50 |
| Jack Wu | $75 | | 9.8 | $735 |
| | | | | |
| **Total** | | | | $171,337.50 |
| **Less 10% Reduction** | | | | **$154,203.75** |

## CONCLUSION

For the foregoing reasons, the Court awards Thor $165,544.78 in attorneys' fees and costs, as well as prejudgment interest on the Goonetillekes' $2,067,288.89 liability, accruing at a rate of 9% since July 2, 2014.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: December 15, 2015
       New York, New York

---

[9] Pursuant to the discussion above, the number of "Hours Billed" excludes both work performed in connection with the present motion and the 1.6 hours of work performed by Mukaida on July 13, 2015 that was unrelated to this litigation.

30